UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JILLIAN M. HELMER, as Co-Trustee of
the HEADLEY GRANDCHILDREN
IRREVOCABLE TRUST and of THE
BEAUTLICH FAMILY GST TRUST and
THE HEADLEY FAMILY GSH TRUST,

Plaintiff,

v.

TRANSAMERICA LIFE INSURANCE
COMPANY.,

Defendant.

Case No.  17-cv-03129-JSW

**ORDER DENYING DEFENDANT'S
MOTION TO DISMISS**

Re: Dkt. No. 68

Now before the Court is the renewed motion to dismiss Plaintiff's complaint, filed by
Defendant Transamerica Life Insurance Company ("Transamerica" or "Defendant").  The Court
has considered the parties' papers, relevant legal authority, and the record in this case, and it finds
the motion suitable for disposition without oral argument.  See N.D. Civ. L.R. 7-1(b).  The Court
DENIES Defendant's motion to dismiss.

## BACKGROUND

Plaintiff Jillian Helmer brings this lawsuit for breach of life insurance policies.  In 1990,
John and Delores Headley purchased three life insurance policies from General Services Life
Insurance Company—two individual policies and a joint "last to die" policy.  (Dkt. No. 1
("Complaint") ¶ 14.)  Only two policies are still in force:  the policy ensuring the life of Delores
Headley and the joint policy ("Policies").  (*Id.*)  Over a series of mergers and acquisitions,
Transamerica came to be the insurer in 2008.  (*Id.* ¶ 19.)  The policies are now owned by the
Headley Grandchildren Irrevocable Trust and John and Delores GST LLC.  (*Id.* ¶¶ 15-16.)

1

United States District Court
Northern District of California

1    Plaintiff, in her co-trustee capacity, alleges that Transamerica breached the "persistency

2    bonus" provisions of the Policies.  (*Id.* ¶ 5.)  Plaintiff bases her claims on the illustrations provided

3    at issuance and again in 2008, which show "an increase in Cash Values equal to the following

4    percentages of premiums":  38% and 40% at the end of year 20, 300% at the end of year 30, and

5    300% at the end of year 40.  (*Id.* ¶¶ 20-23.)  Plaintiff alleges that these cash value increases

6    represented "persistency bonuses" at years 20, 30, and 40, meant to reward keeping the contracts

7    in force over a long time.  (*Id.* ¶ 6.)  Although Transamerica paid the cash value increases for year

8    20 in 2011, Transamerica informed Plaintiff in 2016 that bonuses for years 30 and 40 will not be

9    paid.  (*Id.* ¶¶ 7-8.)  As its rationale, Transamerica explained that it was not required to make these

10   payments pursuant to a 2000 class action settlement in *Oakes v. Bankers United Life Assurance*

11   *Company*, Case No. 96-06849.  (*Id.* ¶¶ 8, 28.)

12   As relevant to this action, the *Oakes* litigation involved claims over deceptive illustrations

13   for Direct Recognition Life insurance policies sold by Bankers United Life Assurance Company.

14   (Dkt. No. 69-4 ("*Oakes* Compl.") ¶ 28.)[1]  As part of the claims, the *Oakes* plaintiffs alleged that

15   the illustrations made erroneous and "fictitious" assumptions, including in "[a]ssuming a

16   persistency bonus rate based on erroneous assumptions lacking any reasonable basis in fact" and

17   "[u]sing unrealistic, unattainable cash value increase assumptions in the twentieth, thirtieth, and

18   fortieth years."  (*Id.*)  The *Oakes* litigation settled in June 2000, issuing a class action notice that

19   released certain claims over Direct Recognition life insurance policies issued by, among other

20   insurers, General Services Life Insurance Company.  (Dkt. No. 69-5 ("*Oakes* Settlement"); Dkt.

21   No. 69-6 ("*Oakes* Class Notice"), 69-7 ("*Oakes* Final Judgment").)

22   Transamerica's interpretation of the *Oakes* settlement surprised Plaintiff.  According to the

23   Complaint, individuals acting on behalf of Transamerica previously referred to "persistency

24   bonuses paid in year 30" and represented that "future amounts to be so credited will also be based

25   on percentages of the first 10 years of scheduled premium," without suggesting that the *Oakes*

26

27   _____

[1] As explained in more detail below, the Court takes judicial notice of the allegations in the *Oakes*

28   complaint and the resulting settlement, not for the truth of the allegations but to determine res
     judicata of Plaintiff's claims in the current action.

1   litigation voided those payments.  (Complaint ¶ 24-25.)  Plaintiff claims that Transamerica's

2   statements induced it to continue paying premiums, instead of cashing out the policies when they

3   still had value.  (*Id.* ¶ 9.)  Now, Plaintiff claims that Mrs. Headley will be left without life

4   insurance unless she pays significantly higher premiums because the cash value of the Policies

5   will lapse without the bonus payments.  (*Id.* ¶ 13.)

6       Accordingly, Plaintiff brings claims for (1) unfair and deceptive business practices, under

7   California Business & Professions Code 17200, *et seq.* ("UCL"), (2) fraudulent inducement, (3)

8   breach of contract, (4) breach of the covenant of good faith and fair dealing, and (5) declaratory

9   judgment that the *Oakes* settlement does not affect Transamerica's obligations to pay the

10  persistency bonuses, which Transamerica is obligated to continue paying.  (*Id.* ¶¶ 38-87.)

11      The Court shall address additional facts as necessary in the analysis.

12                                  **ANALYSIS**

13  **A.    Applicable Legal Standard.**

14      Defendants move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

15  Dismissal under Rule 12(b)(6) is granted when the pleadings fail to state a claim upon which relief

16  can be granted.  The Court's "inquiry is limited to the allegations in the complaint, which are

17  accepted as true and construed in the light most favorable to the plaintiff."  *Lazy Y Ranch LTD v.*

18  *Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).  Even under the liberal pleading standard of Federal

19  Rule of Civil Procedure 8(a)(2), "a plaintiff's obligation to provide the 'grounds' of his

20  'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the

21  elements of a cause of action will not do."  *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007)

22  (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

23      Pursuant to *Twombly*, a plaintiff must not merely allege conduct that is conceivable but

24  must instead allege "enough facts to state a claim to relief that is plausible on its face."  *Id.* at 570.

25  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

26  draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v.*

27  *Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  If the allegations are

28  insufficient to state a claim, a court should grant leave to amend, unless amendment would be

United States District Court
Northern District of California

3

1   futile.  *See, e.g., Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990); *Cook, Perkiss &*

2   *Liehe, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 246-47 (9th Cir. 1990).

3   **B.      Request for Judicial Notice**

4           Defendant seeks judicial notice of certain documents from the *Oakes* litigation and a

5   related Texas action.  Under Federal Rule of Evidence 201, the Court may take judicial notice of

6   an "adjudicative fact" that is "not subject to reasonable dispute" because (1) it is "generally known

7   within the trial court's territorial jurisdiction," or (2) it "can be accurately and readily determined

8   from sources whose accuracy cannot reasonably be questioned."  Courts routinely take judicial

9   notice of documents on file in federal or state courts, which are considered undisputed matters of

10  public records.  *See Harris v. Cty. Of Orange*, 682 F.3d 1126, 1132 (9th. Cir. 2012).  Plaintiff does

11  not oppose.  Accordingly, the Court takes judicial notice of the existence of those proceedings, the

12  scope of the claims asserted in *Oakes*, and the scope of the settlement class and release in *Oakes*.

13          Defendant further seeks to incorporate by reference certain documents related to the

14  Policies.  Under incorporation by reference, a court may consider documents that "plaintiff refers

15  extensively to" in the complaint or that "form[] the basis of plaintiff's claims" as if they were part

16  of the complaint.  *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir 2018).  The

17  purpose of incorporation by reference is to prevent plaintiffs from "selecting only portions of

18  documents that support their claims, while omitting portions of those very documents that

19  weaken—or doom—their claims."  *Id.*  However, while a court may assume the truth of the

20  incorporated document's contents, it is improper to assume facts only to dispute the well-pled

21  allegations of a complaint.  *Id.* at 1003; *see Sgro v. Danone Waters of N. Am., Inc.*, 532 F.3d 940,

22  942 n.1 (9th Cir. 2008) (declining to assume facts stated in ERISA plan documents to resolve

23  motion to dismiss where parties disputed that the documents accurately reflect the plan).

24          Here, Defendant seeks to incorporate by reference (1) the *Oakes* class notice and election

25  forms sent to and received from Plaintiff, (2) letters containing the illustrations referenced in the

26  Complaint, (3) additional letters sent by Defendant to Plaintiff referenced in the Complaint, (4)

27  application for certificates and certificates for the Policies, (5) letters enclosing annual statements

28  for the Policies, and (6) an exemplar master policy.  (Dkt. No. 69 ("RJN") at 6-7.)  Plaintiff

United States District Court
Northern District of California

4

United States District Court
Northern District of California

objects to the class notice and election form letters, the applications and annual statements for the Policies, and the exemplar master policy. Specifically, Plaintiff claims that the class notice and election letters are not "integral" to its claims because they are only relevant to Transamerica's defenses. Plaintiff also disputes the reliability of the Policy applications, certificates, and annual statements, claiming that they are incomplete, inconsistent with other certificates, and may not be the final documents for the Policies.[2]

The Court finds that the Policy illustrations are properly incorporated by reference because they are cited extensively in the Complaint and form the basis of Plaintiff's claim that Transamerica promised to pay persistency bonuses in years 30 and 40. The letters cited in the Complaint are also integral to Plaintiffs claims because Plaintiff alleges that they induced it to keep the Policies in force. Further, although the *Oakes* class notice and election form are not referenced in the Complaint, they are nonetheless integral to Plaintiff's claims because the release may bar Plaintiff's claims and Plaintiff does not dispute signing the forms. *See Adv. Cleanup Techs., Inc. v. BP Am. Inc.*, No. 2:14-cv-09033-CAS (AJWx), 2015 WL 13841820, at *2 n.2 (C.D. Cal. Oct. 9, 2015) (finding "well-established" that settlement releases are integral to claims that would be barred by the release); *see also Birdsong v. AT&T Corp.*, No. C 12-6175 TEH, 2013 WL 1120783, at **2-3 (N.D. Cal. Mar. 18, 2013) (considering release document which plaintiff did not dispute signing). Accordingly, the Court treats these documents as part of the Complaint for purposes of the current motion.

However, Plaintiff's disputes about the authenticity and relevance of the policy applications, annual statements, and exemplar master policy prevent incorporation by reference of those documents. Plaintiff questions the authenticity of the policy applications because they are not consistent with the certificates (for example, they list "Yardbirds of California" instead of "INCA" as the employer) and may not be the final applications. Accordingly, since the parties dispute whether the policy applications accurately reflect the Policies, the Court does not assume the truth of their content. *See Sgro*, 532 F.3d at 942 n.1 (declining to assume truth of plan

---

[2] Plaintiff further objects to the characterizations in the Declaration of Kevin J. MacMahon. The Court does not consider or assume the truth of the attorney argument in this declaration.

documents where the parties dispute that they accurately reflect the plan). Further, the annual statements and exemplar master policy do not appear to be central to Plaintiff's claims because they are not part of the Policies' in-force contract and not alleged to contain fraudulent statements. Defendant seeks to incorporate those documents solely to show that the Policies are DL-10 policies covered by the *Oakes* settlement. But Plaintiff disputes that fact and alleges that the Policies are "Direct Recognition Life I" policies instead. Incorporation by reference cannot be used to defeat well-pled allegations in a complaint. *Khoja*, 899 F.3d at 1003. Accordingly, since the annual statements and exemplar master policy are not integral to Plaintiff's claims, the Court does not consider those documents here.

For these reasons, the Court takes judicial notice of Exhibits A-E and BB-DD of Defendants' Request for Judicial Notice and treats Exhibits F-T and Y-Z only as incorporated by reference.

## C. Motion to Dismiss

Defendant moves to dismiss Plaintiff's Complaint based on release and res judicata, as well as failure to state a claim. The Court first considers release and res judicata, and then analyzes the sufficiency of the remaining claim allegations.

### 1. Release and Res Judicata Do Not Bar Plaintiff's Claims.

Defendant first contends that release and res judicata bar Plaintiff's claims based on the *Oakes* settlement. By its terms, the *Oakes* settlement is governed by the law of the State of Texas. (*Oakes* Settlement § M.15.) Under Texas law, the interpretation of an unambiguous contract is a question of law for the court. *Willis v. Donnelley*, 199 S.W.3d 262, 275 (Tex. 2006). Further, under Texas law, res judicata applies where there is: "(1) a prior final judgment on the merits by a court of competent jurisdiction; (2) identity of parties or those in privity with them; and (3) a second action based on the same claims that were raised or could have been raised in the first action." *Citizens Ins. Co. of Am. v. Daccach*, 217 S.W.3d 430, 449 (Tex. 2007). "Basic principles of res judicata apply to class actions just as they do to any other form of litigation." *Id.* at 450.

Here, the *Oakes* settlement released and discharged all claims for "any or all of the acts" that were or could have been alleged in the litigation, including specifically claims related to "the

United States District Court
Northern District of California

United States District Court
Northern District of California

Companies' policies and practices regarding . . . illustrations of . . . persistency, or other policy

bonuses," as well as "any other matters relating to . . . persistency or other policy bonuses."

(*Oakes* Settlement § H.1.b.1.(b)(15); *see also Oakes* Class Notice Appx. A.)  The settlement class

includes "all persons and entities . . . who have or had at the time of termination, an ownership

interest in certain Direct Recognition life insurance policies or certificates (DRL 8, 10, 11, 20, 21,

22, 23, SPX I, SPX II, SPWL I, SPWL II; and/or Group Universal Life)" that were issued between

December 30, 1988 and December 31, 1997 by certain insurers, including "General Services Life

Insurance Company."  (*Oakes* Class Notice at 4.)

On its face, the *Oakes* release covers the claims brought by Plaintiff, which relate to

Defendant's policies regarding illustrations and payment of persistency bonuses.  Moreover, the

*Oakes* plaintiff appears to have expressly brought claims related to "[a]ssuming a persistency

bonus rate based on erroneous assumptions" and "unattainable cash value increase assumptions in

the twentieth, thirtieth, and fortieth years."  (*Oakes* Complaint ¶ 28(i, j).)  However, Plaintiff

argues that the Policies are not covered by the *Oakes* settlement because (1) they were not sold

through the Advanced Products Division of Bankers United Life Assurance Company,[3] (2) the

Policies are not DRL 10 or any other policy covered by the release, (3) the release exempted

claims for "benefits that will become payable in the future pursuant to the express written terms of

the policy form issued by the Defendants," and (4) the release would violate public policy if it

exempted Defendant from tort liability.

The Court finds that disputed issues of fact preclude dismissal based on release and res

judicata.  Specifically, the Court cannot determine based on Plaintiff's allegations and judicially

noticed documents whether the Policies are one of the listed DRL policies subject to release.  On

their face, the illustrations at issue are for "Direct Recognition Life I" policies, which would be

abbreviated as "DRL I," not "DRL 10."  (*See* Dkt. Nos. 69-9, 69-10 ("Illustrations").)  Drawing all

---

[3] The class definition alleged in the *Oakes* complaint includes "[a]ll persons or entities who have, or had at the time of termination, an ownership interest in one or more Direct Recognition life insurance policies or certificates *sold through the Advanced Products Division of Bankers United Life Assurance Company*."  (*Oakes* Complaint ¶ 18 (emphasis added).)  However, the settlement class had a narrower policy definition—covering only a subset DRL policies—and was not apparently limited by the division sold.  (*See* Dkt. No. 69-7 ("*Oakes* Final Judgment") ¶ 3.)

inferences in favor Plaintiff, the Policies do not fall within the scope of the release and Plaintiff is not estopped from pursuing a claim at the initial pleading stage.[4]  *See ASARVO, LLC v. Union Pac. R. Co.*, 765 F.3d 999, 1004 (9th Cir. 2014) ("If, from the allegations of the complaint as well as any judicially noticeable materials, an asserted defense raises disputed issues of fact, dismissal under Rule 12(b)(6) is improper." (citation omitted)).  For the same reasons, Defendants have not met their burden to show that Plaintiff was part of the settlement class in the *Oakes* litigation and res judicata does not bar Plaintiff's claims at this stage.  *See Solow v. U.S.*, 78 Fed. Cl. 86, 88 (2007) (finding that res judicata did not apply to plaintiff included in the complaint class definition but not the settlement class).

### 2.      Plaintiff's Has Stated A Claim for Breach of Contract.

Defendant argues that Plaintiff cannot state a claim for breach of contract because the express terms of the illustrations do not "guarantee" cash value increases.  The illustrations at issue show two columns for "current cash value":  "illustrated" and "guaranteed."  (*See* Illustrations at 2.)  The "illustrated" column shows cash value increases at years 20, 30, and 40, but the "guaranteed" column shows "zero" values for all years.  (*Id.*)  The fine print clarifies that cash value is calculated by "(i) crediting Premiums Paid, (ii) deducting applicable Loads and Policy Fees, (iii) crediting interest, and (iv) deducting the Administrative Charge and applicable Risk Charge."  (*Id.* at 3.)  The illustrated cash values "assume a hypothetical net Interest rate (after the Administrative charge) of 8% before the target paid-up date and 8% thereafter," while the guaranteed cash values "assume a net Interest rate of 4% (after the Administrative Charge)."  (*Id.*)  Additionally, the illustrated cash values assume the Risk Charge "currently being used by the company," while the guaranteed cash value assume "the maximum Risk Charge allowed under the group master policy."  (*Id.*)  The fine print expressly states that "[y]ou are guaranteed that your Cash Values, subject to any Market Value Equity Concept adjustment, will never be less than

United States District Court
Northern District of California

---

[4] Although Plaintiff elected to receive benefits under the class settlement, Defendants do not raise an estoppel or implied covenant argument.  The Class Notice makes clear that Plaintiff received the notice because she "own[s] or owned a Direct Recognition life insurance policy or certificate," and "*may* be eligible for" benefits.  (*Oakes* Class Notice at 3 (emphasis added); *see also id.* ("[T]he Court directed that this Notice be sent to you as a *potential* Class Member.").)

those illustrated in the column headed Current Cash Value – Guaranteed." (*Id.*)

Although Defendant is correct that only the "guaranteed" column values were, in fact, guaranteed, Plaintiff's breach of contract claim is plausible. The illustration sets out a precise method for calculating the cash value. The difference between the illustrated and guaranteed cash values stems from differences in assumptions of the interest rate and risk charges—which the illustrations expressly limit. Specifically, the interest rate under guaranteed assumptions is limited to 4%, and the risk charge must not exceed "the maximum Risk Charge allowed under the group master policy." But Defendant appears to have terminated the bonus payments based solely on the belief that the *Oakes* settlement would bar Plaintiff's claims: in its letter to Plaintiff, Defendant stated that "[c]onsistent with the terms of the settlement of a class action lawsuit in 2001 that included your policy, we will not credit any cash value bonuses for this policy for the 30th and 40th anniversary years." (Dkt. No. 69-19 ("Termination Letter").) Defendant did *not* state that cash value bonuses would not be paid because the Risk Charge, Administrative Charge, or other fees prevented payment consistent with the restrictions imposed by the illustrations. Accordingly, Plaintiff sufficiently alleges that Defendant failed to properly calculate cash values in accordance with the illustrations.

Moreover, even if the cash value increases stemmed solely from "assumptions" (the illustrations describe the cash value increases as "assumed"), it seems implausible that Defendants had uncabined discretion to assume (or not assume) particular values. The illustrations provided in 2008 warn that the illustrated values are merely approximations and direct the recipient to the annual statement or to contact customer service for information about the actual cash values. (*See* Dkt. Nos. 69-15, 69-16 ("2008 Illustrations").) Plaintiff states that Defendant did not provide the master contract for the Policies, leaving the full policy terms unclear. In light of these facts, Plaintiff plausibly alleges that further discovery will uncover that Defendant breached contract provisions underlying the exercise of discretion for the "assumptions" of cash value increases in deciding to suspend payments based solely on the *Oakes* settlement.

Accordingly, the Court declines to dismiss Plaintiff's breach of contract claim.

//

United States District Court
Northern District of California

### 3. Plaintiff Has Stated a Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing.

Defendant next moves to dismiss Plaintiff's claim for breach of the implied covenant of good faith and fair dealing as duplicative of the contract claim. Under California law, every contract "imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." *McClain v. Octagon Plaza, LLC*, 159 Cal. App. 4th 784, 796 (2008). The implied covenant "prevent[s] a contracting party from engaging in conduct that frustrates the other party's rights to the benefits of the agreement." *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 36 (1995). To state a claim for breach of the implied covenant, Plaintiff must "go beyond the statement of a mere contract breach, relying on the same alleged acts" and "seek[ing] the same damages or other relief already claimed." *Careau & Co. v. Sec. Pac.*, 222 Cal. App. 3d 1371, 1395 (1990). Instead, Plaintiff must allege facts to show that Defendant's conduct, "whether or not it also constitutes breach of a consensual contract term, demonstrates a failure or refusal to discharge contractual responsibilities, prompted not by an honest mistake, bad judgment or negligence but rather by a conscious and deliberate act, which unfairly frustrates the agreed common purposes and disappoints the reasonable expectations of the other party." *Id.*; *see also Celador Int'l Ltd. v. Walt Disney Co.*, 347 F. Supp. 2d 846, 852-53 (C.D. Cal. 2004) (listing three ways to plead breach of the implied covenant under California law).[5]

The Court finds that Plaintiff adequately alleges breach of the implied covenant. Drawing all inferences in favor of Plaintiff, Defendant did not simply refuse to pay cash value bonuses based on an "honest mistake, bad judgment or negligence." Rather, Defendant knew that Plaintiff had valid claims but calculated that she would not be able to enforce those claims because of the *Oakes* settlement. (*See* Complaint ¶¶ 9-10.) Defendant then waited fifteen years—until Mrs. Headley was 82 years old and unlikely to obtain other life insurance—to inform Plaintiff of its intention to suspend cash value increases, all the while offering to keep the Policies active for

---

[5] Although *Careau* suggests that where breach of contract claims are asserted, "the only justification for asserting a separate cause of action for breach of the implied covenant is to obtain tort recovery," it recognizes that an independent claim for breach of the implied covenant may be asserted independently from any claim for breach of agreed-to terms. *See Careau*, 22 Cal. App. 3d at 1395 & n. 16; *see also Guz v. Bechtel Nat'l Inc.*, 24 Cal. 4th 317, 353 n.18 (2000); *Carma Dev. (Cal.), Inc. v. Marathon Dev. Cal., Inc.*, 2 Cal. 4th 342, 373 (1992).

United States District Court
Northern District of California

1   substantially higher premiums.  (*Id.* ¶¶ 30, 46, 80.)  These allegations rely on a different set of

2   facts than the breach of contract claim and are not duplicative.

3         Moreover, to the extent that the claims are based on the same *alleged* facts, the Court finds

4   no error in pleading them in the alternative to account for different facts that may be uncovered by

5   discovery.  *See Celador*, 347 F. Supp. 2d at 853; *see also Deutsche Bank Nat'l Trust Co. v.*

6   *F.D.I.C.*, 784 F. Supp. 2d 1142, 1162-63 (C.D. Cal. 2011) (applying New York law).  Defendant

7   argues that it did not breach the Policies because it has unfettered discretion under the Policies to

8   pay (or not) any cash value increases it wished.  If Defendant is able to prove its assertion,

9   Plaintiff's breach of contract claim fails, but Plaintiff may still prevail on breach of the implied

10  covenant, which requires parties to exercise their contractual discretion "in good faith."  *Carma*

11  *Dev. (Cal.)*, 2 Cal. 4th at 372.  Thus, Plaintiff plausibly alleges in the alternative to her breach of

12  contract claim that Defendants abused their discretion by denying Plaintiff the benefit of the

13  contract.  Accordingly, the Court finds that Plaintiff's implied covenant claim is not duplicative of

14  the breach of contract claim and does not dismiss on this ground.[6]

15        **4.    Plaintiff Has Stated a Claim for Fraudulent Inducement.**

16        Defendant seeks to dismiss Plaintiff's fraudulent inducement claim.  Under California law,

17  "where a contract is secured by fraudulent representations, the injured party may elect to affirm

18  the contract and sue for fraud."  *Lazar v. Super. Ct.*, 12 Cal. 4th 631, 646 (1996).  Fraud must be

19  pled with particularity under Federal Rule of Civil Procedure 9; Plaintiff must allege "what is false

20  or misleading about a statement and why it is false."  *Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993,

21  998 (9th Cir. 2010).  Here, Plaintiff alleges that Defendant induced it to keep the Policies in force

22  by failing to disclose its intention to cancel the cash value increases in years 30 and 40 based on

23  the *Oakes* settlement and by making representations consistent with an apparent intention to keep

24  paying such bonuses.  (Complaint ¶¶ 52-62.)  Specifically, Plaintiff alleges that Defendant's

25  illustrations in 2008 and 2009 misleadingly showed cash value increases in years 30 and 40 and

26

27  _____

28  [6] Plaintiff further contends that its claim is not duplicative because it sounds in tort, not contract. However, Plaintiff does not allege that any benefits are past due, which is required to plead such claims in tort.  *See Progressive W. Ins. Co. v. Super. Ct.*, 135 Cal. App. 4th 263, 278 (2005).

1    that its 2010 letter crediting year 20 cash value increases stated that "[a]ny such amounts would be

2    paid at the end of the 30th and 40th years based on consideration of guaranteed and non-

3    guaranteed portions."  (*Id.*; Dkt. No. 69-17 ("2011 Letter").)  Plaintiff further alleges that Chris

4    Rockwood, an employee of Aegon USA who acted on behalf of Defendant's predecessor, referred

5    to "persistency bonuses paid in year 30" in communicating with Plaintiff.  (Complaint ¶ 24.)

6    Defendant responds that none of these statements are misleading because they expressly

7    distinguish guaranteed cash values from nonguaranteed elements.

8         The Court finds that Plaintiff sufficiently pled the claim for fraud.  Under California law,

9    statements need not be false to constitute misrepresentations.  *See Lazar*, 12 Cal. 4th at 638.

10   Instead, a party who "undertake[s] to provide some information" is "obligated to disclose all other

11   facts which would 'materially qualify' the limited facts disclosed."  *Randi W. v. Murox Joint*

12   *Unified School Dist.*, 14 Cal. 4th 1066, 1082 (1997).  For example, in *Boschma v. Home Loan*

13   *Center, Inc.*, the court found that loan documents that broadly disclosed potential for negative

14   amortization were misleading because they failed to disclose that executing the contract "*definitely*

15   *would* result in negative amortization."  198 Cal. App. 4th 230, 248-50 (2011) (emphasis in

16   original).  Similarly, Defendant's disclosures of "illustrated" cash value increases—even coupled

17   with statements that only some payments were guaranteed—may be misleading if Defendant

18   failed to disclose that those increases *definitely would not* be made because of the *Oakes*

19   settlement.  Accordingly, the Court does not dismiss the fraudulent inducement claim.

20         **5.      Plaintiff Has Stated a Claim Under the UCL.**

21         Defendant moves to dismiss Plaintiff's UCL claim.  California UCL law prohibits "(1)

22   unlawful acts or practices; (2) unfair acts or practices; and (3) fraudulent acts or practices."  *Cel-*

23   *Tech Comm'ns. Inc. v. L.A. Cellular Tel.  Co.*, 20 Cal 4th 163, 180 (1999).  Plaintiff alleges that

24   Defendant acted fraudulently by failing to inform Plaintiff of its intention to suspend cash value

25   bonuses under the *Oakes* settlement and by continuing to illustrate and represent cash value

26   increases.  (Complaint ¶ 44.)  Plaintiff also alleges that Defendant acted unlawfully in violation of

27   the Uniform Insurance Practices Act ("UIPA"), which imposes certain requirements on insurance

28   policy illustrations, as well as common law restrictions on bad faith conduct.  Cal. Ins. Code §

12

United States District Court
Northern District of California

1  10509.965, *et seq*.  Finally, Plaintiff alleges that Defendant acted unfairly because Defendant

2  violated legislatively declared policy (codified as Insurance Code 10113.70) that insurers inform

3  policy holders of "an adverse change in the current scale of nonguaranteed elements" and further

4  acted unscrupulously.  *See Hodson v. Mars, Inc.*, 891 F.3d 857, 866 (9th Cir. 2018).

5       For the same reasons as stated in the previous section, the Court finds that Plaintiff

6  adequately stated a UCL claim under the "fraudulent" prong.  Because Plaintiff only needs to

7  satisfy one of the UCL prongs, the Court does not address the parties' disputes over the unlawful

8  and unfair prongs (which, as the parties acknowledge, involve law that is "in flux" and hinge on

9  Plaintiff's ability to prove other violations).  *See Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152,

10  1168 (9th Cir. 2012).  Accordingly, the Court declines to dismiss Plaintiff's UCL claim.

11      **6.**　**Plaintiff Has Stated a Claim Under the Declaratory Judgment Act.**

12       Defendants last seek to dismiss Plaintiff's declaratory judgment act claim on the grounds

13  that it is duplicative.  However, Federal Rule of Civil Procedure 57 expressly holds that "[t]he

14  existence of another adequate remedy does not preclude a declaratory judgment that is otherwise

15  appropriate."  Plaintiff seeks a declaratory judgment that the *Oakes* settlement does not affect

16  Defendant's obligation to pay persistency bonuses, which are obligatory instead of discretionary.

17  The Court finds that this relief is not duplicative and would serve a useful purpose "in clarifying

18  and settling the legal relations in issue."  *United States v. Wash.*, 759 F.2d 1353, 1357 (9th Cir.

19  1985).  Accordingly, the Court does not dismiss Plaintiff's declaratory judgment act claim.

20  **D.**　**CONCLUSION**

21       For the foregoing reasons, the Court DENIES Defendant's motion to dismiss.

22

23      **IT IS SO ORDERED.**

24  Dated: May 28, 2020

25  _____

26      JEFFREY S. WHITE
    United States District Judge

27

28